Let me ask you a question. Should we adopt the, is it zero? How do you pronounce that? You know, in this case... Let me finish my question. I think you should, but I don't think we're going to get there. And the reason is, when I got this case, I thought, I want to get the Handler case first impression in the Third Circuit. It might get appealed, I might get... Well, the circuits have dealt with that. They have, and there's a uniform way to deal with this, but the problem is that the trial judge made a very fundamental error. He adopted the ruling on the wrong work. There is no dispute today that my client sued for a declaratory judgment that he is the joint author of something of a creative work called the LCID. The Joint? It's a joint work. What's left of his case? You know, I'm not quite sure. I mean, what was left... Well, you can see that he was the, that he was, you can see that he was not the joint author of the handlers. I mean, that was what the whole litigation was about. Until just before it went to the jury. Then you change your theory, and it was kind of a mush. By the time the district judge wouldn't let you do that. So, but that's conceded now. I mean, he was not the joint author that used his computer programs as examples only. And it's conceded now that he is the joint author of the LCID. Which is a work protecting the copyright of the United States. It goes back to, we've asked, and I take the appropriate responses, that it's remanded with directions to end partial summary judgment in favor of my client on the sole issue of liability, that he is the joint author of the LCID. Well, that's conceded. It's conceded he's a co-author of the LCID. What's left? Maybe an accounting of profits. But is that a statement? That's a statement. That's a very good question. I'll take it as a statement. Also, we know anything subject matter jurisdiction in the federal court. Is that if all that's left is an accounting of profits, if there are any, on the LCID, what's left for the district court to do on remand? There is a counter claim. The district judge might be within reason to say there is nothing left that falls within the copyright jurisdiction of this court. I'm going to dismiss it as soon as state court information arrives. So you go through this. We do have a counterclaim in which the defense in the case brought a claim seeking cancellation of two or just three registrations that my client has. Whether or not the court would want to retain the case for that purpose is a little unclear. Is it clear what the district court did on the counterclaim? I'm sorry? Is it clear what the district court did on the counterclaim? Not to me, but I don't know about my colleagues. He granted some judgment on a theory that had never been briefed. No, he granted some authority. He thought that the directed verdict had been on the LCID, but the directed verdict had been on the ADS. That's correct. So that was just confusion. Yes, do I help? And from your perspective on the cancellation? I think you have to. I don't think. I mean, the question of whether or not the district judge may order the cancellation of a copyright is one that's kind of up in the air. But those courts that have considered it and allowed it have applied very specific statutory and regulatory criteria. The judge did not do that. No, they didn't make the finding of fraud. Right, right. Fraud in the office. Yeah. And the other thing is that we had a deal. You know, these are federal clients. They litigated. You know, in the course of the litigation, there was certainly something that caused us to break suit. We had carbide. What the judge ruled on was not within carbide. It was specifically reserved to the state court judge. I don't think that there was any showing of actual injury by E-Tech, which was the company that was seeking the relief. I'd say it was dead wrong, and I can spend my next 15 minutes going through why I think that that was inappropriate. But, you know, the fundamental issue here is that the court should send it back. We should give judgment on liability. We're going to have to deal with the issue of royalties, where that's heard, and so forth. And, you know, it is to me a kind of silly question. Do we really have to get into a settlement agreement and wrongly carve down this? I mean, if we say the district judge only found that the directed verdict, you know, what the directed verdict had said, and so we have to vacate the grant of summary judgment on the claim seeking cancellation. I think it did it wrong. I mean, you were not confused, but you listed it mistakenly. I do, and we'll get through it shortly, whether or not the counterclaim is going to rest the court with jurisdiction. Because if the original claim, the jurisdiction is going to the original claim, if the surviving counterclaim properly alleges federal jurisdiction, I don't even know the answer to that question off the top of my head. It doesn't sound like there's much left in this case. To me, just without prejudging, it seems to me that everything is conceded here. It's color for a black. And the only thing that's left in here is to send the counterclaim back. It's a clear mistake. And what's the remedy, if any? The remedy seems to me just state court telling the problem. State court telling the problem, I see. The worst part of the case was the testimony of the defendant. We certainly began the trial believing one thing and ending it with another. So why do you keep saying this came as a big surprise? Because, well, you were a big surprise, right? I didn't want people to see my channel. No, no, no, no. That's fine. That's all right. You just came back. Well, over and over, you say, and you say in your briefs, that Lindsay's testimony, in the trial she registered the copies in 1996 and included Brownstein's programs in the second registration. But this was a big surprise. Well, I had this case for two years. I mean, they didn't, from my perspective, and not as a trial counsel, but they were claiming, look. But Brownstein testified that he knew that Lindsay claimed in a deposition that his programs were really examples. She said it in her deposition near the close of discovery. If it was a trial order, I can state that what someone says in deposition and what they may testify to in trial can be two different things entirely. My job in that particular circumstance is to be prepared to deal with things and emotions in pre-trial orders such as they exist. I really, when I say surprise, maybe that's me. I did not think that she was going to. It didn't change the landscape of the litigation. Well, there's no landscape litigation doctrine that I'm aware of. And I looked. But, you know, and I looked at this and I said, well, you know, it would be Rule 15. But there's no big Rule 15 motion that you've already created. I think they're getting away from kind of what I said. What's left of this case? So, you know, there are factual issues that are involved there because these particular lawyers have been through iterations and revisions. And, you know, you get into questions of what the numbers should be and how it should be determined. But I think at the end of the day, those are issues that experts will decide whether it's in federal court or in state court. And that would really be up to the district judge whether or not he wants to. Continue to exercise jurisdiction. It's such a shame. I mean, these people weren't together for 20 years, was it? Yeah. And they were friends for 30. I mean, 25. Yeah. And nobody tried to put them together and make a settlement ultimately? No. I mean, look, at the end of the day, it's not that they fell for control of the company. It was a very expensive, difficult battle. I mean, the amount of money that's involved. Billions. This isn't millions. This is billions. It's a very successful, valuable technology. And the company has done quite well for itself and for the owners. And frankly, they, you know, there was a big battle over who was going to be in charge of the company and who would control it. Was that what the fight was? That is what the state court case was about. It was. Well, but she was the president, right? She was the president. He was the secretary treasurer, as I recall. And then Tapp on behalf of the defense tech. Is Nelson still around? Yes. As far as I know. I mean, the case has been over for two years or so. But as far as I know, they are there. They are operating. They are doing fairly well. And, you know, how the rest of it gets shaken out is a little, you know, still up in the air. And I think Judge Cassano will have to make some decisions about that. But I agree entirely with the court that there really is nothing out there. The fundamental issues of the appeal and of the claim have been conceived by the defendants. Thank you. Oh, that's interesting. Mr. Howard, good morning. Yes, sir. Good morning. Yeah. I'm Thomas Howard. I am the attorney for the defendants at Belize, Tina Lindsay, and Ethnic Technologies. If I could, I'd rather begin with my prepared argument. I would respond to Judge Barry's question. Yes, which is whether all that's left is a state court proceeding, or I guess it could be a district court proceeding, involving royalties. Do you deny that Brownson owns the copyright and the LCID product? Absolutely. Absolutely. There's no copyright registration. So we're talking about a copyright. You can see that Jerome offers. I can see that he provided if this else did, which was never adequately defined at the trial. And the reason is, going back to the landscape or sea change, because it was not raised in the way that counsel now wishes to raise it. It was raised as this is a lawsuit over two copyright registrations. And Brownstein, in fact, testified at trial that he believed, and he's the one who's claiming joint authorship, he believed... You've conceded joint authorship of the LCID. It depends what you call the LCID. I don't mean to be... Are you lobbying? Well, I... But I'll explain why I disagree. Okay. And the reason is, as Mr. Brownstein testified, the product, which is how he described it, which is sometimes referred to as the LCID, the short end, has changed. It's no longer the program C. It is other derivative works that were done by other people during the course of the 14 years that they were together. And that was never adequately defined. So, and this was Plymouth's case, claiming that there was some kind of joint authorship. I'm sorry. You mean the change wasn't adequately defined at trial? Yes. Well, let's assume that for a moment. If the change wasn't adequately defined, wouldn't that ignore his benefit? Well, if he was in the real position now, he'd say, hey, it's a lot different. We've got derivative works and stuff like that. So if you, through Cross, presumably, didn't define that well at trial, then that would mean that it would be the prior view of the LCID, which would prevail, which would be, as has been suggested, that there are co-authors in it. Because you would vote. Brownstein testified at trial that he was claiming co-authorship of the EDS. He said that. Look, this was a mess. Let's just put it that way, right? Until it was, he was complaining of co-authorship of the EDS, LCID. And then finally, just before he went to the jury, he tried to go back and say, he tried to change it to the LCID. Because he's realized now, he should have realized it earlier than he did, that he was not co-author of EDS. As I've said, there's nothing left of that in terms of the trial. So I don't understand what you're saying. Well, let's make sure that he agrees with you, Mary Ann. Well, the problem is the derivative still is seeking to obtain judgment on the complaint that they filed. Now, if I understand what your honor just said, you're saying that the court properly ruled that the... It was a fairly unreceived complaint to go to the LCID. Okay. The prop, didn't you have that in mind? Properly ruled, you know, ruled against him on the EDS. Right. And he concedes he's not a juror, not that he is. Well, then this appeal is taking a different posture than it's being presented. That was my understanding. Okay. That's not the argument. And I'm trying very hard to understand the argument that's presented. That's not the argument as I understood it on this appeal. He stuck with what he did at trial, which was bring this case under the EDS. Yes. The EDS. Then he tried to change it just before it would have had to go to the jury on the claim that was never in the complaint, but he tried to change it to. And the judge wouldn't let him. The jury wouldn't have understood. All of a sudden, they have all the evidence about the EDS, and he tries to switch it just before it goes to the jury and wants that to go to the jury too. They have their evidence. Right. And he hadn't amended his complaint. Then this court, by defining the state of the law. It would affirm. It would affirm on that issue, which of course is what I'm arguing for. But then we move to the counterclaim, and I'll move to that then. And we also deal with the characterization of it as only a lower court issue about royalties. Because while there may have been a joint authorship contribution in the programs for Brownstein, and I don't dispute that, which occurred back in 1994, 1996, there are all kinds of defenses that still apply to that. Some of which are moderately before this court, such as the statute of limitations defense, because he is asserting. I don't know if we have to reach that. Well, no, you're absolutely right. The court does not. And the judicial economy would indicate for this court not to do that. However, that means we've got to go through the whole thing all over again in the state court. Well, maybe yes, maybe no. First, you have to go back to the district court and see what's left, perhaps. Well, and we could really get this new issue all over again. I understand that. So let me move to the HR claim. And since I see the drift of the court on that, I may just move on. Wait a minute. She is not the court. She is a member of court. Yes. She's also my friend. Yes. And you're my friend. Well, don't let me get in the middle of the rubbin'. It's OK. I'm a bad player. OK. I'm worried because I'm not sure I understand what you guys are agreeing to. Well, I can tell you that she thinks we don't have to reach the statute of limitations on that. Yeah, but that's not what I was looking at in question. So ECD is put to the side. LCID, I'm not clear. I thought you were not conceding that there are co-authors on LCID. I am conceding that Brownstein made a contribution in the form of the programs back in 1994 to 1996 or so. What I'm not conceding now is that what we are currently referring to the LCID is, in fact, his work. And that is what I said was not developed at the trial. And that is what he had the burden of developing. What is it? I read his papers on this appeal. I can't figure out if we were to define, if we were to put a description rather than just a label, on what it is he claims is his work now, that is currently in use today. But when he filed the complaint, when he filed it, I read there to be a concession that at least the LCID at the time, whatever it is, he was the co-author of whatever was at issue then. It may have happened over the last few years. When I say now, I was referring to 2009, which is when the complaint was filed. When you say other people have approved it, that's fine, but that's not before us. That whole process, the derivation process to which he testified, took place before he left the company in 2010. So when this LCID was developed, when it was made the product, it was 1997. There was a lot of work over the dam, a lot of work under the bridge since then, and a lot of changes to it. We're really talking about that time period. We're not talking about, as you just said, now. She had the, she knew the rules. And we felt that neither of the companies were happy for those rules. So that's, to me, maybe I'm looking at it too simply. No, I agree. I mean, this is what, 2013? I'm sure there's a lot of work under the bridge. Well, he added the new things that he claims are his. Well, he added, and also other people who worked for ETAC added, and there was testimony in that in the trial transcript that many people worked on this. As he said, major changes were made to this. It's not the same. So that's his trial testimony. So you also concede that it goes back only to determine what's left of the LCID. I agree. Well, except that if it would go back for an accounting of profits as to that with which he was responsible, you know. He can't provide them as to what he was responsible for. It's a joint profit. Only to a certain point, if I understand your argument. Well. But why would he make his argument? Again, it's not merely accounting. First of all, he has to prove that he's entitled to anything. The documents established would still contend that this is all property that he assigned transferred to ETAC, transferred it in 2097 in both locations, and that he later confirmed. So we have that issue. So we're not just jumping to an accounting. He's got to prove liability. Do you represent ETAC, finally? I'm sorry? Who represents ETAC? I represent ETAC. ETAC, Ethnic Technologies is the same company. ETAC is just a short name. Were there any profits before 1997 assignments? Assignment? I believe this is not a record, but there were no profits prior to 1997. But that's the kind of report. Well, you're still going to get into perhaps, perhaps. It's not a point that's ever been developed. To what period of time do you concede joint authorship? 1997. Were there any profits? That's when you have the merger with CMR, Consumers Marketing Research, and that's where you have the assignment. It had already been transferred by Lindsay. She already licensed it all. He claims he didn't know about it, but that was earlier in the same year. So you go back to 1997, and then after that you have a joint enterprise where all the assets are given to the common company, and then later there are documents that confirm. I'm not sure whether he knew it or didn't know it really, because she acted in a manner that was consistent with the co-authorship. That was my point on the sexual limitations here, that there was throughout this a plain and express repudiation of his ownership of the programs. Every single document confirmed that it was transferred to the corporate enterprise, and he signed the license agreements in which he confirmed that the corporate enterprise owned the programs as well as the copyrights. So you get both the EES and the ELSID as being owned by Cap Systems. In fact, the ELSID was also known as the Cap System and then owned by ECAP. So you have this complete history that is inconsistent with his claim now, asserted 14 years after the first document occurred. That's where the sexual limitation comes in. That's why it applies whenever we're talking about a source that's asserting a joint ownership claim. If I might lastly on the counterclaim then, which I haven't touched, I don't believe. I cannot concede that the court better belong on the counterclaim. Can you concede that? I cannot concede that, Your Honor. What is the directed verdict? What did the judge find on the directed verdict? On the directed verdict, the judge found that the plaintiff had claimed he was entitled to recover on, which we're now calling EES, was being not made out of case law. And on the counterclaim, he found that he found the ELSID claim on the directed verdict. He reversed the case. The two were reversed. Yes? Yes? Now, he didn't use the word ELSID. What he found was that the settlement agreement by which all that was left, there was a colloquy between Mr. McDaniels and Judge Pisano in which the judge said, so what you're telling me is if it's not copyrighted, all you have is an item of personal property. And all the personal property was assigned back to ETEC. You're just saying what his opinion and order said. That was in the argument, and that's what led the judge's decision. There was nothing left for Mr. Brownstein to claim he was entitled to other than what he asserted in the lawsuit. And all he asserted in the lawsuit was a fee. What did the district judge say in the opinion and order that it decided on the directed verdict? He decided that the EDS, that Mr. Brownstein had failed to put out a prima facie case to show that the EDS was a joint product, a joint authorship. I'm going to go ahead and close it. Can I have that reversed? You're right. It's worn a lot, but this guy won't have it reversed. Just have to find it. This is going to get the whole question reformed in all respects. Okay, thank you. Thank you. This is what count one of the complaints says. This is what count one of the complaints says. Yeah, go ahead. I'm going to read page 39. Wherefore, plaintiff denies judgment against defendants as follows. In declaration that Brownstein is the co-author of the LCID and co-owner of the copyright to the LCID. Copyrights are property. Our copyright laws are governed by almost entirely, almost everything turns on sexual model one in the definitions that are provided there. The LCID, which is exactly what was alleged, and when we tried to prove it in the examination testimony trial, we see that all of the testimony was about how Peter Brownstein took this idea and came up with a modulated system that could convert it to usable data and produce a product. The product was the point. They were in the direct mail business, and that's the only thing we ever cared about. No one ever denied Tina Lindsay the fact that she was quite innovative and creative and that she had developed something out of the box, which she entitled to a certificate of sole rights of authorship. The problem is that after having spent so many years in business, we discovered in the midst of a PhD litigation that she has taken those programs, she's given them two pages, the certificate, but she has filed a deposit copy of 800 and some pages, including the open business programs. But she said, didn't she say that that was just as an example? She did, but she didn't answer the question. It was after 20 years of litigation. But you've conceded this. Why are you wondering so much? Well, I think I'm addressing what Mr. Howard says about whether or not there's anything that survives. We've always claimed the SAD. Now, the issue... Do you want to finish that sentence? I'll finish that sentence. I'm sorry. We've always claimed the SAD. We've always claimed solely to have an interest as co-op in the commercial product. That's what nobody cared about. It got messed up because over the two years, they basically took the position. You may have owned it, but unfortunately, you're too late, because T.L. Lindsay registered it in 1996 in a four-year time bar. It turned out that all of that baggage that went on through the two years of litigation became moot when she testified in trial with the positions that they'd taken, and that's where we stand today. In a world where the copyrighted work is created and fixed at a point in time, there's no doubt that there have been changes, and my client participated in them. The issue of what survives and what is a reasonable royalty is one that will have to be dealt with. I can tell you that among the issues that were created by Mr. Bronstein, which I believe still continue today, organization of the data, conversion of what we call human-readable data into machine-readable data, there are aspects of it that survive, and there are aspects that have been changed. Mr. Bronstein has rights as the creator, as the co-author of the work, from which each of the other items are derived to be compensated for the continuing use of the work in which he's co-authored. The amount is something that we have simply not gotten to. The assignment issue, there was no merger. There's no merger certificate. There's no asset purchase agreement. Mr. Bronstein has never assigned anything. He's never executed a document that would demonstrate an act that's intended to divest himself of his rights. If that's an issue that remains, we'll have to deal with it. We're here because of Count 1, of what we saw, and the judges having made a mistake in their ruling based on a misunderstanding. He took all of the six programs and pushed them together. Frankly, my adversary has just done the same thing. The programs that were derived subsequent to the LCID are not the LCID. They are derivative programs. The copyright section defines them as being independent works. So his signature on a subsequent document, five years later, that says, we now, we tag we on the copyrights in this court. That's literally true, but it's not a derogation of his rights as the co-author of the work on which it was derived. Thank you. All right. Thank you very much, counsel, for a well-briefed and well-armed case. We'll take it under advisement. Thank you very much.